UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOSE WATER COMPANY,<br><br>          Plaintiff,<br><br>     v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>          Defendant. | Case No. 24-cv-05780-EKL<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 38 |

In this eminent domain case, Plaintiff San Jose Water Company ("SJWC") seeks to acquire a permanent easement on sections of a railway corridor owned by Defendant Union Pacific Railroad Company ("Union Pacific"). Before the Court is Union Pacific's motion for summary judgment, which contends that SJWC has not produced evidence that the proposed condemnation is necessary for any public use as required by California's eminent domain law. Mot. for Summ. J., ECF No. 38 ("Mot."). The Court carefully reviewed the entire record, provided a tentative ruling to counsel, and heard argument on December 16, 2025. For the following reasons, the Court hereby adopts its tentative ruling and GRANTS Union Pacific's motion.

I.     **BACKGROUND**

SJWC is an investor-owned public utility water corporation that distributes water to the public. Am. Compl. ¶¶ 1-2, ECF No. 33 ("Compl."). The property that SJWC seeks to condemn is part of the Vasona Branch rail corridor, which Union Pacific has owned and operated since the late nineteenth century. Fact No. 1.[1] To the west, the rail corridor extends to a rock quarry and

---

[1] This Order relies exclusively on undisputed facts. *See* Reply Separate Statement, ECF No. 40-1. Citations to "Fact No." reference the undisputed facts proffered by Union Pacific, and citations to "Add. Fact No." reference the undisputed facts proffered by SJWC. SJWC objected to certain evidence, *see id.*, but not to the undisputed facts and evidence cited herein.

1  cement plant, and to the east, it connects with Union Pacific's north-south rail corridor, which
2  "connects with Union Pacific's 32,000-mile railroad network." Fact Nos. 3, 5. The Vasona
3  Branch is "improved with tracks, signal and other road crossing protection equipment, drainage
4  facilities that ensure roadbed integrity, and beautification and buffer areas." Fact No. 7. Although
5  there is no current traffic on the Vasona Branch, the corridor "remains part of Union Pacific's
6  national rail network." Fact No. 6. Union Pacific "licenses the use of the Vasona Branch for
7  various revenue generating activities including the installation and maintenance of third-party
8  utilities," including a water pipeline operated by SJWC. Fact No. 9.

9  In 1953, the parties' predecessors entered into an agreement ("Indenture") by which Union
10 Pacific granted SJWC an easement to "lay, relay, construct, reconstruct, replace with pipe of the
11 same or different size, maintain and use a water pipeline" across the rail corridor. Fact No. 12.
12 The existing easement "is approximately 4.18 miles long and ten feet in width." Fact No. 13. The
13 existing easement is "subject and subordinate to" Union Pacific's right to use and maintain the
14 property "in performance of its public duty as common carrier." Fact No. 15. The Indenture
15 permits Union Pacific to require SJWC to relocate its water pipeline if Union Pacific needs to
16 install additional tracks or as otherwise required for the railroad's purposes. Fact No. 16.

17 The present case was filed in response to a dispute between the parties regarding the
18 amount of rent owed by SJWC for the existing easement. "The Indenture provides that the annual
19 rent due to Union Pacific may be revised to fair rental value every five years, and that, if the
20 parties cannot agree on the fair market rent, then the issue will be resolved by a panel of three
21 arbitrators." Fact No. 19. On January 5, 2023, Union Pacific provided notice to SJWC of the new
22 rental rate that it intended to apply to the five-year term beginning June 24, 2022, which SJWC
23 rejected. *See* Fact Nos. 20-21, 24-25. On July 12, 2024, Union Pacific initiated arbitration
24 pursuant to the process set forth in the Indenture, and the parties are currently involved in the
25 arbitration process. Fact Nos. 21-22, 27; *see also* Wallenstein Decl. Ex. 13, ECF No. 38-17. On
26 July 19, 2024, SJWC filed this action, seeking to use the power of eminent domain to acquire a
27 permanent easement comprising the same property on which it currently operates its water
28 pipeline. *See* ECF No. 1; *see also* Fact No. 28 ("The easement property SJWC seeks to condemn

1  is, undisputedly, identical to the Existing Easement."). Now, Union Pacific seeks an order that
2  SJWC lacks the right to take the proposed easement because the taking is unnecessary.

## II.    LEGAL STANDARD

A court may grant summary judgment on any issue, claim, or defense if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in different ways depending on whether it has the burden of proof at trial. If the moving party bears the burden of proof at trial, it must cite to "particular parts of materials in the record" to demonstrate that no reasonable trier of fact could find for the non-moving party. Fed. R. Civ. P. 56(c)(1)(A). By contrast, if the non-moving party bears the burden of proof at trial, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has met its burden, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine dispute. *Celotex*, 477 U.S. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to survive summary judgment. *Anderson*, 477 U.S. at 252. Instead, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.*

In determining whether there is a genuine dispute of material fact, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The court does

1   not "engage in credibility determinations or weigh evidence." *Munden v. Stewart Tit. Guar. Co.*,
2   8 F.4th 1040, 1044 (9th Cir. 2021). "The district court need not examine the entire file for
3   evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing
4   papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco*
5   *Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also* Fed. R. Civ. P. 56(c)(3).

At summary judgment, the focus is not "on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). An affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. DISCUSSION

In California, the exercise of eminent domain is governed by statute, and the right to take is an issue decided by the trial court. *Town of Apple Valley v. Apple Valley Ranchos Water*, 108 Cal. App. 5th 62, 74, 76 (2025). California's Eminent Domain Law provides that:

> The power of eminent domain may be exercised to acquire property for a proposed project only if all of the following are established:
>
> (a) The public interest and necessity require the project.
>
> (b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury.
>
> (c) The property sought to be acquired is necessary for the project.

Cal. Civ. Proc. Code §1240.030.

As the party seeking to condemn private property, SJWC bears the ultimate burden to prove that these elements are met by a preponderance of the evidence. *Robinson v. Super. Ct.*, 88 Cal. App. 5th 1144, 1167 (2023); *see also* Opp. at 15, ECF No. 39 (acknowledging that "SJWC has the burden of proving the public necessity elements at trial"). Therefore, to satisfy its burden at the summary judgment stage, Union Pacific must demonstrate that there is an absence of

4

1    evidence to support SJWC's claim of necessity.  *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P.
2    56(c)(1)(B).
3       Union Pacific contends that SJWC cannot meet its burden as to the third element – *i.e.*, that
4    "[t]he property sought to be acquired is necessary for the project."  Cal. Civ. Proc. Code
5    §1240.030(c).  The parties primarily dispute whether a taking is necessary when the public entity
6    already owns substantially the same property interest that it seeks to condemn.  The most
7    compelling authority on this question is *City of Los Angeles v. Keck*, 14 Cal. App. 3d 920 (1971).
8    In *Keck*, the City of Los Angeles had an existing easement for the "construction, maintenance and
9    operation of one or more electrical transmission lines."  *Id*. at 922-23.  The City sought to
10   condemn "a fee simple estate in the identical property subject to the easement," purportedly to
11   construct an additional power transmission line.  *Id*. at 923.  However, it was undisputed "that by
12   virtue of the existing easement," the City could continue its present use and "accomplish any
13   future use now within [its] contemplation," including construction of the new line.  *Id*.  The court
14   reasoned that necessity was lacking because the only purported use for the property was
15   "permissible under the existing easement."  *Id*. at 926-27.  Thus, the court held that the City
16   "failed to meet the burden of showing that the proposed taking of the fee is necessary for the
17   public use."  *Id*. at 928.
18      SJWC has not identified any persuasive authority that undermines the principle in *Keck*
19   that the scope of a public entity's existing easement is relevant to the necessity of exercising the
20   power of eminent domain.  SJWC first cites *Shell California Pipeline Co. v. City of Compton*,
21   35 Cal. App. 4th 1116 (1995).  In *Shell*, the plaintiff operated oil pipelines subject to franchise
22   agreements that *had expired*, and it sought to acquire easements that would allow it to continue
23   operating the pipelines to avoid more costly alternatives, such as delivering the oil by tanker
24   trucks.  *Id.* at 1119-21.  Because the agreements had expired, the plaintiff had "no right to operate
25   its pipeline" without exercising eminent domain to acquire the easement.  *Id*. at 1127.  The court
26   distinguished *Keck* based on these facts, but the court did not cast any doubt on the principle that
27   property may not be necessary for a project when the public entity owns an easement that
28   "adequately permit[s] any future anticipated use."  *Id*. at 1126-27.

1    SJWC also cites *City of Glendale v. Superior Court*, 18 Cal. App. 4th 1768 (1993). However, that case did not raise nor decide issues of necessity. Instead, *City of Glendale* addressed "whether a public entity lessor, which is a party to a lease with a minimum fixed term, may be liable for breach of contract for exercising its power of eminent domain over the leasehold interest prior to the expiration of such term." *Id*. at 1775. The court held that the city did not breach its contract because the city did not concede its power of eminent domain solely by leasing the property at issue. *Id*. at 1777-78. *City of Glendale* is inapposite because Union Pacific does not argue that SJWC breached the Indenture, nor that SJWC contracted away its power of eminent domain. Instead, Union Pacific argues that SJWC cannot establish the necessity required for eminent domain because the Indenture already provides all the property rights necessary for SJWC to continue its project of distributing water to the public.

Here, the Court concludes that the principle in *Keck* is dispositive. Having reviewed the entire summary judgment record, there is no genuine dispute of material fact that SJWC's taking of the easement is unnecessary.[2] Just as in *Keck*, the "easement property SJWC seeks to condemn is, undisputedly, identical to the Existing Easement." Fact No. 28. It is also undisputed that "the Indenture and the Existing Easement: (i) permit all current uses of the pipeline; and (ii) permit all contemplated future uses of the pipeline." Fact No. 35. Specifically, "the existing pipeline and Existing Easement: (i) serve the current demand for water by the community served by the pipeline; and (ii) serve the projected future demand for water in the benefitted communities." Fact No. 36; *see also* Fact Nos. 40-41 (existing easement ensures a reliable water source for SJWC's customers served by the pipeline); Wallenstein Decl. Ex. 10 at 8-9, ECF No. 38-14 (admitting that the Indenture permits "all current uses" and "all contemplated future uses" of SJWC's pipeline); Sneed Tr. 21:16-21, 38:13-40:13, ECF No. 38-9. Because SJWC seeks to condemn an easement merely to continue operations that are permitted under the current easement, SJWC cannot establish a right to take as a matter of law.

---

[2] Because the Court finds that there are no triable issues on the necessity of the taking, the Court does not reach Union Pacific's alternate basis for summary judgment – that the taking is not "compatible with the greatest public good and the least private injury." *See* Cal. Civ. Proc. Code § 1240.030(b).

6

1    SJWC has identified four potential grounds for the necessity of acquiring the easement
2    through eminent domain:  (1) expanding the easement to include two areas that are not covered by
3    the existing easement; (2) ensuring SJWC's "use in perpetuity" of the easement; (3) relatedly,
4    avoiding potential termination of the existing easement by Union Pacific; and (4) avoiding
5    "arbitrary rent increases every five years."  Fact No. 44.  The Court addresses each argument in
6    turn.

7    First, SJWC initially contended that it needs to condemn the easement because two
8    portions of its water pipeline are located outside of the legal description of the existing easement
9    in the Indenture.  Fact No. 28.  However, SJWC has now conceded that these two portions are in
10   fact covered by the existing easement.  Fact Nos. 29-32.[3]  In other words, "the easement property
11   SJWC seeks to condemn is, undisputedly, identical to the Existing Easement."  Fact No. 28.
12   Therefore, there is no genuine dispute of fact that the exercise of eminent domain is not necessary
13   for SJWC to acquire rights in any new territory.

14   Second, SJWC's desire to guarantee use of the easement "in perpetuity" and to avoid
15   potential termination of the easement by Union Pacific cannot support necessity on the facts of
16   this case.  The existing easement *is* perpetual, subject only to termination under two conditions:
17   SJWC's abandonment of the existing easement, and SJWC's material breach of the Indenture.
18   Fact No. 34; Hoffman Tr. 43:4-19, ECF No. 38-8 ("Q.  So you would agree with me that absent
19   some termination of the agreement, the existing easement is in perpetuity.  Right?  A. Correct.");
20   *see also* Wallenstein Decl. Ex. 8 at SJWC_0001614, ECF No. 38-12.  Both termination conditions
21   are exclusively within SJWC's control, and SJWC does not intend to abandon the easement or
22   breach the Indenture.  Wallenstein Decl. Ex. 10 at 6-7; Hoffman Tr. 67:16-20.  Additionally, the
23   possibility of termination is speculative because "Union Pacific has never attempted to terminate
24   the Indenture in the 72 years of its existence."  Fact No. 39; *see also* Sneed Tr. 31:19-23.  SJWC
25   has not identified any facts or evidence suggesting that Union Pacific will terminate the easement
26   going forward.  Fact Nos. 46-47; *see also* Hoffman Tr. 67:7-10, 74:24-75:7.

---

[3] With respect to Fact No. 32, SJWC does not dispute the factual proposition that the two areas are covered by the existing easement, but it does dispute the legal significance of this fact.

SJWC argues that Union Pacific may require it to relocate the water pipeline, and that relocation is tantamount to terminating the easement. However, "[a]lthough the Indenture gives Union Pacific the right to demand relocation [of SJWC's pipeline], that has never happened in the 72 years since the parties signed the agreement." Fact No. 38; *see also* Add. Fact No. 11. And there is no evidence in the record that Union Pacific intends to seek relocation of the pipeline going forward.[4] SJWC has not identified any legal authority holding that taking is "necessary" because it avoids a hypothetical future risk to an existing property interest – let alone a risk that has never materialized in 72 years. *Cf. Keck*, 14 Cal. App. 3d at 923 (holding that taking of a fee simple estate was not necessary in light of an existing easement).

Finally, contrary to SJWC's argument, the existing easement is not encumbered by "arbitrary rent increases every five years." Fact No. 44. Instead, the Indenture provides that "the annual rent due to Union Pacific may be revised to fair rental value every five years, and that, if the parties cannot agree on the fair market rent, then the issue will be resolved by a panel of three arbitrators." Fact No. 19; *see also* Fact No. 45. Thus, SJWC's existing easement is subject only to paying the fair rental value of the property, and there is no evidence that Union Pacific could unilaterally impose an arbitrary rent increase that may disrupt SJWC's delivery of water to the public. Moreover, SJWC's exercise of eminent domain is also subject to paying fair market value, so the easement that SJWC seeks would not grant it any greater rights in terms of avoiding costs under the existing easement. *See* Add. Fact No. 20; Hoffman Tr. 67:21-69:15.

In sum, Union Pacific has met its burden of showing that there is no triable issue as to the necessity of SJWC's proposed taking. Therefore, Union Pacific is entitled to judgment as a matter of law that SJWC lacks a right to take the easement sought in the first amended complaint.

\*\*\*

---

[4] SJWC argues that the "Vasona Branch could be put into service at any time" according to Union Pacific's representative, Dan Leis. Leis Decl. ¶ 12, ECF No. 38-1. But speculation about possible future uses by Union Pacific is insufficient to create a genuine dispute of fact as to the necessity of eminent domain *now*. *See Anderson*, 477 U.S. at 252. As Mr. Leis elaborated at his deposition, Union Pacific's current operations do not interfere with SJWC's pipeline, and Union Pacific has no plans to install a second set of tracks, or to pursue any other use that might require relocation of SJWC's pipeline. Leis Tr. 22:18-26:10, 28:3-10, 59:7-11, 60:4-8, 69:4-22, 74:12-16, ECF No. 39-6.

In its answer, Union Pacific asserted a counterclaim for declaratory relief. Answer at 11, 17-19, ECF No. 35. Specifically, Union Pacific claimed that there was an "actual controversy" between the parties regarding whether the Interstate Commerce Commission Termination Act preempts SJWC's condemnation action. *Id*. at 19. At the motion hearing, Union Pacific acknowledged that, if the Court adopted its tentative ruling and granted Union Pacific's motion for summary judgment, Union Pacific's counterclaim would become moot. The Court agrees that Union Pacific's counterclaim is mooted by the Court's dismissal of SJWC's eminent domain action, which extinguishes any actual controversy between the parties. Accordingly, Union Pacific's counterclaim is DISMISSED as moot.[5]

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Union Pacific's motion for summary judgment. As discussed above, the Court's decision rests on the undisputed facts as presented by the parties at this time. This Order does not preclude SJWC from bringing a separate action in the future, to the extent conditions materially change in a manner that could support SJWC's right to take. However, given the lack of necessity on the current record, the complaint is DISMISSED.

**IT IS SO ORDERED.**

Dated: December 26, 2025

_____
Eumi K. Lee
United States District Judge

---

[5] "[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 593 U.S. 659, 672 (2021). A justiciable case or controversy exists for purpose of declaratory relief if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A case becomes "moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (1997)).